1

2

3

4

5

6

7

8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   VICTOR P. ALFARO,

11              Petitioner,                  No. 2:10-cv-1967 MCE CKD P

12        vs.

13   MIKE McDONALD,

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner, a state prisoner currently confined at High Desert State Prison, is

17   proceeding pro se with a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner

18   challenges his May 2008 conviction for robbery with an enhancement for personal use of a

19   firearm.  Petitioner claims that (1) he received ineffective assistance of counsel at trial, and (2)

20   there was no substantial evidence to support the firearm enhancement.  Upon careful

21   consideration of the record and the applicable law, the undersigned will recommend that

22   petitioner's application for habeas corpus be denied.

23                                  BACKGROUND

24   I.  Facts

25              In its affirmation of the judgment on appeal, the California Court of Appeal, Third

26   Appellate District, provided the following factual summary:

1

After work on August 1, 2007, Miguel Lopez Ortiz [FN3] walked to the Western Union on Charter Way in Stockton to send money to Mexico.  As Lopez left the Western Union, he noticed a red GMC van parked in the area with a license plate starting with the number 5, and three people inside.   Lopez crossed the street and the van followed him for two blocks.  At the intersection of Jackson and Van Buren, Victor and Simon got out of the van and approached Lopez.  Victor stood in front of Lopez and Simon was behind him.  Victor told Lopez "give me the cash" and showed Lopez the gun in his pocket.  Lopez also noticed Simon had what appeared to be the outline of a handgun in his pocket.  The display of the guns scared Lopez and he removed money from his wallet and handed it to Victor.  At trial, Lopez described the gun Victor had as a .45-caliber handgun with a chrome top.  Lopez saw approximately four to five inches of the gun because Victor had the gun in his pocket and was covering it partly with a shirt that was wrapped around his hand.

FN3. The parties refer to the victim as Lopez. We will refer to him as Lopez as well.

At approximately 5:15 p.m. on August 3, 2007, Telesfordo Zuniga was sitting inside his truck at his home on San Juan Avenue in Stockton and saw a red van stop in front of his house.  Two young men got out of the van and ran.  Police officers came shortly thereafter in response to dispatch notifying them that a witness was following a vehicle that was involved in a robbery and ended up in that area.

The two young men were identified as Victor and Eduardo Moreno.  Officer Richard Hamblin found the two young men sitting on a porch, out of breath, sweating, and very nervous.  When Officer Hamblin attempted to question Victor, Victor initially said he was walking around the neighborhood all day.  After Officer Hamblin conducted a field "showup," he reapproached Victor and let him know he had been identified by a witness as being in the van.  Victor responded: "I'm sorry for lying, I got nervous, I was in the vehicle."  Officer Hamblin then informed Victor that he was identified as being one of the suspects in a beating and robbery of a farmworker that happened that day.  Victor responded, "It just happened. I don't know."  Simon was not implicated in this incident and Victor was not charged with any offense that occurred on August 3, 2007.

Defendants were charged and tried for the robbery of Lopez.  The trial court admitted the evidence of the uncharged August 3 offense to prove identity as to Victor only.  There is no dispute the trial court specifically considered the potential prejudicial effect of admitting testimony regarding the August 3 incident and determined it was outweighed by the probative value of the evidence to show identity under Evidence Code sections 352 and

2

1          1101.

2          Three witnesses testified regarding the August 3 incident, and the
           trial court admonished the jury about each witness's testimony.
3          After the testimony of Telesfordo Zuniga, the trial court
           admonished the jury, "This testimony is directed only towards
4          Victor Alfaro, not Simon Alfaro." Prior to the testimony of Officer
           Hamblin, the trial court admonished the jury, "The testimony is
5          related as ... to Victor Alfaro only." Again the trial court
           admonished the jury before Officer Sidney Siv testified that the
6          testimony "is also directed just towards Victor Alfaro."

7          The trial court also read the jury instructions on: evidence
           (CALCRIM No. 222), multiple defendants and the limited
8          admissibility of evidence (CALCRIM No. 304), and evidence of
           defendant's statements (CALCRIM No. 358).  At the end of these
9          instructions and before the trial court continued instructing the
           jury, Victor's counsel objected.  After a conference at the bench,
10         the trial court excluded all of the testimony about the August 3
           incident.

11

12  (Lod. Doc. C ("Opinion") at 2-5.)[1]

13  II.  Procedural History

14          Following his conviction in the San Joaquin County Superior Court in May 2008,

15  petitioner was sentenced to thirteen years in state prison: three years for second degree robbery

16  and an additional ten years for the firearm enhancement.  (Cal. Penal Code §§ 211, 12022.53.)

17  (Dkt. No. 1 ("Ptn.") at 1, 17-18.)

18          Petitioner appealed the judgment to the California Court of Appeal for the Third

19  Appellate District.  (Lod. Doc. A.)  On January 26, 2010, the judgment was affirmed in a

20  reasoned opinion.  (Opinion.)  Petitioner then filed a petition for review in the California

21  Supreme Court.  (Lod. Doc. D.)  On April 14, 2010, the California Supreme Court summarily

22  denied the petition.  (Lod. Doc. E.)

23          Petitioner filed the instant petition on July 23, 2010.  (Ptn.)  Respondent filed an

24  answer on December 10, 2010.  (Dkt. No. 10.)  Petitioner did not file a traverse.

25  _____

26          [1] Lodged documents refer to those documents lodged by respondent on January 7, 2011.
    (Dkt. No. 12.)

ANALYSIS

I. AEDPA

       The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

       As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Id. at 784-785, citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis).  "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely."  Id. at 785.

       The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal

1  law.'" <u>Harrington</u>, <u>supra</u>, 131 S. Ct. at 785, citing <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000).

2  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

3  'fairminded jurists could disagree' on the correctness of the state court's decision." <u>Id</u>. at 786,

4  citing <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004).  Accordingly, "a habeas court must

5  determine what arguments or theories supported or . . could have supported[] the state court's

6  decision; and then it must ask whether it is possible fairminded jurists could disagree that those

7  arguments or theories are inconsistent with the holding in a prior decision of this Court." <u>Id</u>.

8  "Evaluating whether a rule application was unreasonable requires considering the rule's

9  specificity.  The more general the rule, the more leeway courts have in reaching outcomes in

10  case-by-case determinations.'" <u>Id</u>.  Emphasizing the stringency of this standard, which "stops

11  short of imposing a complete bar of federal court relitigation of claims already rejected in state

12  court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does

13  not mean the state court's contrary conclusion was unreasonable." <u>Id</u>., citing <u>Lockyer v.</u>

14  <u>Andrade</u>, 538 U.S. 63, 75 (2003).

15          The undersigned also finds that the same deference is paid to the factual

16  determinations of state courts.  Under § 2254(d)(2), factual findings of the state courts are

17  presumed to be correct subject only to a review of the record which demonstrates that the factual

18  finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in

19  light of the evidence presented in the state court proceeding."  It makes no sense to interpret

20  "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in

21  § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the

22  same record could not abide by the state court factual determination.  A petitioner must show

23  clearly and convincingly that the factual determination is unreasonable.  See <u>Rice v. Collins</u>, 546

24  U.S. 333, 338 (2006).

25          The habeas corpus petitioner bears the burden of demonstrating the objectively

26  unreasonable nature of the state court decision in light of controlling Supreme Court authority.

1    Woodford v. Viscotti, 537 U.S. 19 (2002).  Specifically, the petitioner "must show that the state

2    court's ruling on the claim being presented in federal court was so lacking in justification that

3    there was an error well understood and comprehended in existing law beyond any possibility for

4    fairminded disagreement."  Harrington, supra, 131 S.Ct. at 786-787.  Clearly established law is

5    law that has been "squarely addressed" by the United States Supreme Court.  Wright v. Van

6    Patten, 552 U.S. 120, 125 (2008).  Thus, extrapolations of settled law to unique situations will

7    not qualify as clearly established.  See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006)

8    (established law not permitting state sponsored practices to inject bias into a criminal proceeding

9    by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed

10   guards does not qualify as clearly established law when spectators' conduct is the alleged cause

11   of bias injection).  The established Supreme Court authority reviewed must be a pronouncement

12   on constitutional principles, or other controlling federal law, as opposed to a pronouncement of

13   statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. 3, 9 (2002).

14         The state courts need not have cited to federal authority, or even have indicated

15   awareness of federal authority in arriving at their decision.  Early, supra, 537 U.S. at 8.  Where

16   the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the

17   federal court will independently review the record in adjudication of that issue.  "Independent

18   review of the record is not de novo review of the constitutional issue, but rather, the only method

19   by which we can determine whether a silent state court decision is objectively unreasonable."

20   Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

21         Finally, if the state courts have not adjudicated the merits of the federal issue, no

22   AEDPA deference is given; the issue is reviewed de novo under general principles of federal law.

23   James v. Ryan, __ F.3d __, 2012 WL 639292 *18-19 (9th Cir. 2012).

24   \\\\\

25   \\\\\

26   \\\\\

1   II.  Petitioner's Claims

2   A.  Ineffective Assistance

3           Petitioner claims that his trial counsel was ineffective for not requesting that the

4   jury be admonished to disregard his statements about the uncharged, August 3, 2007 offense.  As

5   noted above, the trial court excluded all testimony concerning the August 3 incident.  However,

6   the jury was allowed to consider petitioner's own statements to police that he was in a red van on

7   August 3, as this went to the disputed issue of identity.  See Reporter's Transcript ("RT") 392-

8   393, 412, 425-426.  Specifically, Officer Hamblin testified that, on August 3, he "told [Victor]

9   that he was just ID'd as being in that car [a red van].  And he said, 'I'm sorry for lying, I got

10  nervous, I was in the vehicle.'"  RT 323-324.  This statement served to link petitioner to the

11  August 1 robbery, whose perpetrators had jumped out of a red van.  Petitioner argues that it was

12  ineffective assistance of counsel to "not request the court to strike the testimony of Hamblin that

13  referred to the August 3rd robbery, and request that the jury be admonished to disregard any

14  references to it."  (Ptn. at 28.)

15           In denying petitioner's claim on appeal, the Third Appellate District reasoned:

16           On appeal, Victor claims the trial court improperly allowed his
             statement made as to the uncharged August 3 offense to show
17           identity under Evidence Code section 1101 and the failure of his
             trial counsel to request that the jury be further admonished to
18           disregard Victor's statement denied Victor the right to effective
             assistance of counsel.  We disagree.
19
             Before the jury deliberated, the trial court instructed the jury to
20           disregard all of the testimony about the August 3 incident.  As with
             Simon, this body of evidence did not exist as far as the jury was
21           concerned when it deliberated.

22           To establish ineffective assistance of counsel, a defendant must
             show that counsel's performance fell below an objective standard
23           of reasonableness under prevailing professional norms, and that
             defendant suffered prejudice as a result.  (In re Wilson (1992) 3
24           Cal.4th 945, 950.)  To establish prejudice, a defendant must
             demonstrate a reasonable probability that the result of the
25           proceedings would have been more favorable to him but for
             counsel's error.  (Strickland v. Washington (1984) 466 U.S. 668,
26           693-694.)  A reviewing court need not address whether counsel's

1   performance was deficient if defendant does not show prejudice.
    (People v. Kipp (2001) 26 Cal.4th 1100, 1123.) Victor does not
2   show he was prejudiced.

3   Even without the identity evidence from the uncharged incident,
    the victim of the August 1 robbery identified Victor as one of the
4   men who robbed him.  Because there was already testimony as to
    the identity of Victor in the charged offense, he has not shown a
5   reasonable probability that the result of the proceedings would
    have been more favorable to him.  (See Strickland v. Washington,
6   supra, 466 U.S. at pp. 693-694.)  Victor claims the in-court
    identification of him by Lopez was flawed.  Witness credibility
7   issues and evidentiary conflicts are matters for the jury to decide,
    however, not this court. (People v. Maury (2003) 30 Cal.4th 342,
8   403.)  Victor's claim of ineffective assistance of counsel fails.

9   (Opinion at 7-8.)

10          The test for demonstrating ineffective assistance of counsel is set forth in

11  Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

12  all the circumstances, counsel's performance fell below an objective standard of reasonableness.

13  Strickland, 466 U.S. at 688.  To this end, the petitioner must identify the acts or omissions that

14  are alleged not to have been the result of reasonable professional judgment. Id. at 690.  The

15  federal court must then determine whether in light of all the circumstances, the identified acts or

16  omissions were outside the wide range of professional competent assistance.  Id. "We strongly

17  presume that counsel's conduct was within the wide range of reasonable assistance, and that he

18  exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg,

19  898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689).

20          Second, a petitioner must affirmatively prove prejudice.  Strickland, 466 U.S. at

21  693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

22  unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A

23  reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.

24          In extraordinary cases, ineffective assistance of counsel claims are evaluated

25  based on a fundamental fairness standard.  Williams v. Taylor, 529 U.S. 362, 391-93 (2000).

26  \\\\\

1          The Supreme Court has recently emphasized the importance of giving deference

2   to trial counsel's decisions, especially in the AEDPA context.  Harrington v. Richter, 131 S. Ct.

3   770, 787-788 (U.S. 2011); see also Premo v. Moore, 131 S.Ct. 733 (U.S. 2011) (discussing

4   AEDPA review of ineffective assistance of counsel claim where petitioner alleges that counsel

5   was ineffective at the plea bargain stage).

6          Here, petitioner has not shown that his counsel's performance fell below an

7   objective standard of reasonableness.  Earlier in the trial, counsel "objected to the use of the

8   August 3, 2007 robbery.  Counsel argued that it was insufficiently similar conduct to show

9   appellant's identity as the robber in the August 1, 2007 incident."  (Ptn. at 22, citing RT 163.)

10  This argument was largely successful, as after a bench conference the trial court "excluded all

11  evidence of the August 3, 2007 offense, except that he permitted the jury to consider appellant's

12  statement" to Officer Hamblin.  (Id. at 24, citing RT 392-393.)  While petitioner argues that his

13  counsel should have done still more to ensure that the jury did not consider the events of August

14  3, counsel's conduct does not meet the high Strickland bar for ineffective assistance.

15         As to prejudice, petitioner argues that  petitioner's statements to Hamblin could be

16  "construed as an admission" to the August 3 crime.  Thus, "[t]he jury was left with the impression

17  that appellant was a participant in another robbery near in time to this one.  The suggestion was

18  that, if he robbed another Hispanic man, he must have robbed Lopez."  (Ptn. at 27.)  However,

19  petitioner never admitted culpability in the August 3 incident, and the state court reasonably

20  concluded that he was not unduly prejudiced by the admission of his August 3 statements.  Under

21  the deferential AEDPA standard, the state court reasonably denied petitioner's ineffective

22  assistance of counsel claim.  Thus he is not entitled to federal habeas relief on this basis.

23  B.  Insufficient Evidence

24         Petitioner claims that there was not substantial evidence to support the sentence

25  enhancement for personally using a firearm during a robbery.  Petitioner concedes that he was

26  "armed and prepared to use the firearm if necessary," but claims that the evidence did not show

1  that he used the firearm in the commission of the robbery.  (Ptn. at 6-7.)

2          The court of appeal addressed petitioner's argument, reasoning as follows:

3          Victor claims there is insufficient evidence to support the jury's
            finding that he personally used a firearm in the commission of the
4          robbery of Lopez. We disagree.

5          The test for sufficiency of the evidence to support an enhancement
            is whether, after viewing the evidence in the light most favorable to
6          the judgment, any rational trier of fact could have found the
            elements of the enhancement beyond a reasonable doubt.  (People
7          v. Alvarez (1996) 14 Cal. 4th 155, 224-225 [personal use of a
            deadly weapon].)

8
            The trial court instructed the jury with CALCRIM No. 3146, as
9          follows, "Someone personally uses a firearm if he or she
            intentionally does any of the following: [] (1) Displays the weapon
10         in a menacing manner; [] (2) Hits somebody with the weapon; []
            (3) Or fires the weapon."

11
            Victor cites People v. Jacobs (1987) 193 Cal. App. 3d 375 to show
12         that his case falls within " 'those in which the gun was held or
            exposed in a menacing fashion accompanied by words threatening
13         a more violent use.' "  Specifically, Victor emphasizes that cases in
            this category  " 'require some type of display of the weapon,
14         coupled with a threat to use it which produces fear of harm in the
            victim before there can be a use.' "  (Italics omitted.)  Victor,
15         however, omits a footnote that indicates the above statement is
            similar to the facts of People v. Colligan (1979) 91 Cal.App.3d 846
16         "in which a suspect displayed the handle of a gun protruding from
            his waistband and said he had a gun and did not want to use it."
17         (Jacobs, at p. 381, fn. 2.) This is comparable to the present case.

18         Similar to Colligan, Lopez testified Victor told him "give me the
            cash," as Victor stood in front of him with his hand over his pocket
19         on his pants, showing Lopez the gun in his pocket. (See People v.
            Colligan, supra, 91 Cal.App.3d at p. 849.)  Lopez saw
20         approximately four to five inches of Victor's gun and was able to
            describe it as a .45-caliber handgun with a chrome top.  Lopez
21         testified that Victor's display of the gun when he demanded the
            money was what scared Lopez and caused him to remove the
22         money from his wallet and hand it to Victor.

23         This is enough evidence for the jury to find beyond a reasonable
            doubt that Victor "[d]isplay[ed] the weapon in a menacing
24         manner." (See CALCRIM No. 3146.)  Therefore, there is
            substantial evidence to support the jury's conclusion that Victor
25         personally used a firearm in the commission of the robbery of
            Lopez.

26
                                              10

1   (Opinion at 10-11.)  Although petitioner raised federal due process grounds in his petition to the

2   state court of appeal (Lod. Doc A at 17), court did not explicitly address why this constitutional

3   claim lacked merit.  Where the state courts have not addressed the constitutional issue in dispute

4   in any reasoned opinion, the federal court will independently review the record in adjudication of

5   that issue.  "Independent review of the record is not de novo review of the constitutional issue,

6   but rather, the only method by which we can determine whether a silent state court decision is

7   objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

8          The Due Process Clause of the Fourteenth Amendment "protects the accused

9   against conviction except upon proof beyond a reasonable doubt of every fact necessary to

10  constitute the crime with which he is charged."  In re Winship, 397 U.S. 358, 364 (1970).  There

11  is sufficient evidence to support a conviction if, "after viewing the evidence in the light most

12  favorable to the prosecution, any rational trier of fact could have found the essential elements of

13  the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "[T]he

14  dispositive question under Jackson is 'whether the record evidence could reasonably support a

15  finding of guilt beyond a reasonable doubt.'"  Chein v. Shumsky, 373 F.3d 978, 982-83 (9th Cir.

16  2004) (quoting Jackson, 443 U.S. at 318).  "A petitioner for a federal writ of habeas corpus faces

17  a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction

18  on federal due process grounds."  Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  In

19  order to grant the writ, the federal habeas court must find that the decision of the state court

20  reflected an objectively unreasonable application of Jackson and Winship to the facts of the case.

21  Id. at 1275 & n. 13.

22         The court must review the entire record when the sufficiency of the evidence is

23  challenged in habeas proceedings.  Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985),

24  vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is

25  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw

26  reasonable inferences from basic facts to ultimate facts."  Jackson, 443 U.S. at 319.  If the trier of

1    fact could draw conflicting inferences from the evidence, the court in its review will assign the

2    inference that favors conviction.  McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994).

3    "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."

4    United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) (internal quotation marks,

5    brackets and citation omitted).  In addition, "the assessment of the credibility of witnesses is

6    generally beyond the scope of review."  Schlup v. Delo, 513 U.S. 298, 330 (1995).

7           "The relevant inquiry is not whether the evidence excludes every hypothesis

8    except guilt, but whether the jury could reasonably arrive at its verdict."  United States v. Mares,

9    940 F.2d 455, 458 (9th Cir. 1991).  Thus, "[t]he question is not whether we are personally

10   convinced beyond a reasonable doubt" but rather "whether rational jurors could reach the

11   conclusion that these jurors reached."  Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The

12   federal habeas court determines sufficiency of the evidence in reference to the substantive

13   elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n. 16; Chein,

14   373 F.3d at 983.

15          Here, petitioner's due process argument turns on the definition of "personal use"

16   of a firearm during the commission of a robbery.  Petitioner concedes that he possessed the

17   firearm, but he argues that this does not rise to the level of personal use as required to prove the

18   sentence enhancement under Cal. Penal Code section 12022.53(b).  This section provides:

19   "Notwithstanding any other provision of law, any person who, in the commission of a felony

20   specified in subdivision (a), personally uses a firearm, shall be punished by an additional and

21   consecutive term of imprisonment in the state prison for 10 years[.]"

22          The California State Legislature intended to deter firearm use in passing this

23   provision, and notice of this legislative intent requires a court to construe the term "use" broadly.

24   People v. Chambers, 7 Cal. 3d 666, 672 (1972).  Use of a firearm that puts the victim in fear and

25   facilitates the offense can constitute use of a firearm within the meaning of the statute."  Id. at

26   672.  When the defendant deliberately shows a gun to intimidate the victim and accomplish the

1   offense, the fact finder can properly conclude that this was "a facilitative use rather than an

2   incidental or inadvertent exposure."  People v. Bryant, 191 Cal. App. 4th 1457, 1472-73 (2011)

3   (affirming robbery conviction and sentence enhancement for personally using a firearm).  The

4   Bryant court held that it was a jury question whether during a robbery the defendant used, rather

5   than merely possessed a gun, where the defendant had a gun at his side in view of the victim and

6   spoke in a menacing tone.  Id.

7            During a crime, "armed offenders frequently may passively display their firearms,

8   without actually using them to facilitate the commission of their offenses."  People v. Nelums, 31

9   Cal. 3d 355, 360 (1982).  But courts take a commonsense approach to distinguishing between

10  facilitative use and mere possession.  People v. Granado, 49 Cal. App. 4th 317, 325 (1996).  If

11  there is no evidence to suggest that the defendant displayed the gun for any purpose but to

12  intimidate the victim, then a fact finder can find this display to be a facilitative use.  Id.  The

13  Granado court held that there was no reasonable explanation for the defendant moving a gun

14  from his waistband, to his hand, and back to his waistband, other than to intimidate the victim

15  and facilitate the robbery.  Id.

16           Here, Lopez testified that he walked to Western Union to send money to Mexico.

17  (RT 198.)  Lopez saw petitioner walk up to him on the street with a gun protruding from his

18  pocket and partially concealed by a shirt.  (RT at 201.)  Lopez described the gun as a .45 caliber

19  handgun with a chrome top.  (Id.)  Lopez said he saw the bottom of the handgun's "clip."  (RT

20  209.)  Lopez testified that petitioner told him, "Give me the money," and that he quickly

21  complied.  (RT 207, 246-247.)

22           Lopez said petitioner's gun frightened him into surrendering his money.  (RT

23  251.)  When Lopez was first asked if he recognized the robbers in the courtroom, Lopez

24  answered, "No."  (RT 200.)  Lopez later explained that he did see petitioner, and the other robber

25  in the courtroom, but was initially too afraid to identify them.  (RT 228, 260.)  Lopez testified

26  that the robbers could come to his house and hurt him.  (RT 228.)  Lopez said he was reluctant to

1   even report the crime to the police because he feared retaliation from petitioner.  (RT 260.)

2   Because he was afraid the robbers would get out of jail and hurt him, Lopez said that after he

3   finished work, he would go home and lock himself inside.  (Id.)

4          Construing the term "use" broadly as required by Chambers, petitioner's firearm

5   display assisted him in robbing Lopez.  See Chambers, 7 Cal. 3d at 672.  Lopez testified that

6   petitioner's gun display put him in fear, and Lopez testified that he surrendered his money

7   because of the gun.  (RT at 228, 251, 260.)  Petitioner's firearm use facilitated the robbery.  See

8   Bryant, 191 Cal. App. 4th at 1472.  Petitioner presented no evidence that he displayed the firearm

9   for a reason other than to intimidate Lopez.  Consistent with the holding in Granado, the jury was

10  within its discretion to find that petitioner's firearm use facilitated the robbery and satisfied the

11  sentence enhancement.  See Granado, 49 Cal. App. 4th at 325.

12         Viewing the evidence in the light most favorable to the jury's verdict, a rational

13  trier of fact could have found beyond a reasonable doubt that there was substantial and sufficient

14  evidence that petitioner personally used a firearm during the robbery.  Thus petitioner is not

15  entitled to habeas relief on this claim.

16         Accordingly, IT IS HEREBY RECOMMENDED that:

17         1.  The petition for writ of habeas corpus (Dkt. No. 1) be denied; and

18         2.  This case be closed.

19         These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

21  one days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24   shall be served and filed within fourteen days after service of the objections.  The parties are

25  advised that failure to file objections within the specified time may waive the right to appeal the

26  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

1        If petitioner files objections, he shall also address if a certificate of appealability

2 should issue and, if so, as to which issues.  A certificate of appealability may issue under 28

3 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a

4 constitutional right."  28 U.S.C. § 2253(c)(2).  The certificate of appealability must "indicate

5 which specific issue or issues satisfy" the requirement.  28 U.S.C. § 2253(c)(3).

6  Dated: July 9, 2012

7

8 CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26